Case 4:18-cv-00007 Document 96 Filed on 01/22/20 in TXSD Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
January 22, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OPPORTUNE LLP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-7 |
| | § | |
| OPORTUN, INC. and OPORTUN, LLC, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Defendants Oportun, Inc. and Oportun, LLC's Motion for Summary Judgment (Document No. 65).[1] After carefully considering the motion, response, reply, sur-reply, and applicable law, the Court finds that the motion should be denied.

I. Background

Plaintiff Opportune LLP is a global energy consulting firm with its principal place of business in Houston, Texas.[2] Plaintiff owns the federally registered trademark "OPPORTUNE," as well as related design marks, which it has been using in commerce since 2005.[3] Defendants Oportun, Inc. and Oportun, LLC provide personal loans and lines of credit to people with little or no credit

---

[1] Plaintiff's Opposed Motion for Leave to File a Surreply (Document No. 88) is GRANTED.

[2] Document No. 77, ex. 1 at 53:1-22, 71:6-22; Document No. 78 ¶ 3.

[3] Document No. 78 ¶¶ 5-8; id., ex. 2.

history through an online presence and numerous financial services locations, including more than twenty in Houston.[4] Defendants operated under other names until approximately 2015 when they changed their names and began advertising their financial services in Texas and elsewhere using their own federally registered "OPORTUN" marks.[5] Since that time, Plaintiff has been receiving misdirected telephone calls and emails from Defendants' actual and potential customers.[6] Plaintiff sent Defendants a cease and desist letter in February 2017 but has continued to receive calls, emails, and other misdirected items intended for Defendants.[7]

Plaintiff alleges in this suit federal claims for (1) trademark infringement, (2) unfair competition, and (3) violations of the Anti-Cybersquatting Consumer Protection Act ("ACPA"), and state law claims for (4) injury to business reputation and dilution, (5) trademark infringement, and (6) unfair competition.[8] A few days after being served with Plaintiff's suit, Defendants registered nearly 200 domain names that included "OPPORTUNE" with

---

[4] Document No. 66 ¶¶ 6, 13, 28; Document No. 77, ex. 5.

[5] Document No. 66 ¶¶ 20, 25-27; Document No. 68, exs. 3-4.

[6] Document No. 78 ¶¶ 24-26, 39-41; id., exs. 27, 28.

[7] Document No. 78 ¶¶ 26-27, 30, 39-46; id., exs. 26, 41-44.

[8] Document No. 50 (1st Am. Compl.).

a double "p" and an "e" at the end, the exact spelling of Plaintiff's mark.[9]

## II. Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In considering a motion for summary judgment, all justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id.

## III. Discussion

A. Trademark Infringement and Unfair Competition

Defendants move for summary judgment on Plaintiff's claims for trademark infringement and unfair competition. The central element

---

[9] Document No. 77, ex. 9 at 140:1-141:13; id., ex. 16.

3

in dispute on these claims is the likelihood of confusion. In assessing likelihood of confusion, courts examine eight nonexhaustive "digits of confusion":

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, . . . (7) any evidence of actual confusion[,] . . . [and] (8) the degree of care exercised by potential purchasers.

Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist., 912 F.3d 805, 812 (5th Cir. 2019) (quoting Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc., 851 F.3d 440, 453 (5th Cir. 2017)) (alterations and omissions in original). The summary judgment record is replete with facts evidencing that almost every digit of confusion is present. Viewed in the light most favorable to Plaintiff, Plaintiff's summary judgment evidence establishes genuine issues of material fact that there is a likelihood of confusion, precluding summary judgment for Defendants on Plaintiff's claims of trademark infringement and unfair competition.

B.  Dilution Under Texas State Law

Defendants move for summary judgment on Plaintiff's state law dilution claim, relying on 15 U.S.C. § 1125(c), which provides that "a state law dilution claim is barred when the allegations are

4

based on a defendant's use of a federally-registered trademark." Buc-ee's Ltd. v. Panjwani, No. 4:15-CV-03704, 2017 WL 4221461, at *2 (S.D. Tex. Sept. 21, 2017). However, because Plaintiff in its trademark infringement claims challenges the validity of Defendants' federally registered marks, the federal registration defense is unavailable. See id. at *3 ("[T]he federal registration defense cannot be applied . . . because the *validity* of [defendant's] marks is currently in dispute.").

Defendants also argue that they are entitled to summary judgment on Plaintiff's state law dilution claim because Plaintiff's marks are not famous in Texas. Under the Texas anti-dilution statute, "the owner of a mark that is famous and distinctive . . . in this state is entitled to enjoin another person's commercial use of a mark or trade name that begins after the mark has become famous if use of the mark or trade name is likely to cause dilution of the famous mark." TEX. BUS. & COM. CODE § 16.103(a). Defendants argue that Plaintiff's marks need to have been famous in Texas before January 5, 2015, when Defendants began using their marks, and that Plaintiff has failed to prove such fame. Plaintiff, however, does not need to prove that the marks are famous throughout Texas but only that they are famous in a geographic area of the state. See id. § 16.103(b) ("[A] mark is considered to be famous if the mark is widely recognized by the public throughout this state or in a geographic area in this

state as a designation of source of the goods or services of the mark's owner."). The statute lists specific factors courts may consider in determining whether a mark is famous. *See* id. § 16.103(b)(1)-(4).

Defendants rely on a survey conducted by their employed expert to show a lack of public recognition of Plaintiff's marks throughout Texas and argue that their survey results are uncontroverted by any survey taken by Plaintiff. Plaintiff responds with numerous reasons why the methodology employed in obtaining Defendants' survey is not reliable. Apart from that dispute, Defendants cite case law from other circuits to assert the importance of surveys in demonstrating public fame in the context of federal dilution claims. However, here the Texas anti-dilution statute applies. As mentioned above, the statute itself specifies factors a court may consider in determining whether a mark is famous:

> (1) the duration, extent, and geographic reach of the advertisement and publicity of the mark in this state, regardless of whether the mark is advertised or publicized by the owner or a third party;
>
> (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark in this state;
>
> (3) the extent of actual recognition of the mark in this state; and
>
> (4) whether the mark is registered in this state or in the United States Patent and Trademark Office.

Id. § 16.103(b). Surveys are not listed among the statutory factors suggested. Evidence of a survey may be considered but is not typical, and if considered is only one of a number of relevant factors. Indeed, contrary to practices relied on by Defendants in other circuits, courts applying Texas law have not placed the same emphasis on surveys as dispositive of a mark's fame. Rather, courts in Texas, consistent with § 16.103(b), have considered factors such as advertising and marketing strategies using the mark, sales volume of the party asserting the claim, and recognition of the mark in Texas or a geographic area of Texas. *See, e.g.*, Buc-ee's, 2017 WL 4221461, at *5 ("Buc-ee's has identified evidence related to duration, extent, and reach of advertisement and publicity in support of finding of prior fame."); Emerald City Mgmt., LLC v. Kahn, No. 4:14-cv-358, 2016 WL 98751, at *10 (E.D. Tex. Jan. 8, 2016) (finding that plaintiff "produced sufficient evidence to raise a fact issue" as to fame when plaintiff proved fame in the Dallas/Fort Worth region of Texas by producing evidence of internet and social media advertising, sales in the Dallas area, and trademark registration); *see also* Pearson's Inc. v. Ackerman, No. 7:18-cv-00013-BP, 2019 WL 3413501, at *20 (N.D. Tex. July 29, 2019) (finding Texas dilution claim is unsupported when "[t]here is little to no evidence of [plaintiff's] marketing efforts, sales volume, or recognition of the [plaintiff's] mark in Texas"); US Risk Ins. Grp. Inc. v. U.S. Risk

7

Mgmt., LLC, No. 3:11-cv-2843-M-BN, 2013 WL 4504754, at *21 (N.D. Tex. Aug. 20, 2013) (concluding that, for a federal dilution claim, plaintiff met its burden in producing evidence to show a fact issue as to whether its mark is famous by producing evidence that plaintiff spent time and money "marketing, promoting, and selling its products and services").

Plaintiff has produced summary judgment evidence of considerable advertising, social media presence, sponsorships, and income attributable to its presence in Texas as well as evidence of its registered trademarks.[10] This includes evidence of net income in Texas from 2014 and of a significant social media presence going back at least to 2014 before Defendants began using their marks in 2015.[11] Additionally, Plaintiff's marketing director has testified to and exhibited evidence of Opportune's broad national marketing program, which includes focused attention in the Houston region of Texas. For examples, Plaintiff has had prominent public sponsorships including since 2012, Texas A&M University's football and basketball programs, and their various events and press conferences, and for several years beginning in 2017, the annual U.S. Men's Clay Court Tennis Championship in Houston.[12] On summary

---

[10] Document No. 77, ex. 27; Document No. 78 ¶¶ 11-23; Document No. 78, exs. 1-25.

[11] Document No. 77, ex. 27; Document No. 78, exs. 10-12.

[12] Document No. 78, exs. 13-22.

8

judgment the evidence is viewed in the light most favorable to the non-movant, and Plaintiff at least has raised a fact issue on whether its mark has sufficient fame in a geographic area of Texas to maintain a Texas state law dilution claim.

C.  Violation of the ACPA

Defendants move for summary judgment on Plaintiff's claim of violations of the ACPA. "The elements for a claim under the ACPA are: (1) the mark is a [sic] famous or distinctive; (2) the domain name is 'identical or confusingly similar' to the mark; and (3) the individual registering for the domain name had a bad faith intent to profit from the domain name." Emerald City Mgmt., 2016 WL 98751, at * 13 (citing 15 U.S.C. § 1125(d)(1)(A)). Defendants primarily argue that their domain name registrations of Plaintiff's mark were not done in bad faith. The ACPA provides a list of nine non-exhaustive factors a court may consider when determining bad faith:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

9

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous.

15 U.S.C. § 1125(d)(1)(B)(i). "The first four [factors] suggest circumstances that may tend to indicate an absence of bad-faith intent to profit from the goodwill of a mark, and the others suggest circumstances that may tend to indicate that such bad-faith intent exists." Emerald City Mgmt., 2016 WL 98751, at *13 (citation omitted).

10

The uncontroverted summary judgment evidence is that Defendants registered nearly two hundred domain names containing Plantiff's "OPPORTUNE" mark between <u>January 13 and January 24, 2018</u>, just *after* Defendant Oportun, Inc.'s registered agent was served with summons and a copy of Plaintiff's Original Complaint on <u>January 9, 2018</u>.[13] Registering domain names after litigation begins may be seen as bad faith under the ACPA. *See* <u>E. & J. Gallo Winery v. Spider Webs Ltd.</u>, 286 F.3d 270, 276 (5th Cir. 2002) (affirming summary judgment against an ACPA violator and noting that two circuits "have indicated that when a registrant first uses a web site after litigation begins, this undermines any claim that the use was in good faith or was a fair use under the ACPA"). Defendants argue that they registered many of the domain names defensively and have not attempted to sell any of the domain names or otherwise profit from them. Of course not, not with this case pending. For one to file vast numbers of registrations with Plaintiff's mark beginning four days after being sued by Plaintiff for trademark infringement invites reasonable inferences of retaliation and bad faith filings to obtain litigation leverage. Regardless, the fact that Defendants so far have not attempted to sell the domain names does not dispositively disprove bad faith. *See* <u>Emerald City Mgmt.</u>, 2016 WL 98751, at *14 ("Courts have found bad faith intent to profit from a domain name even where the holder

---

[13] Document No. 77, ex. 16; Document No. 10.

11

did not make an offer to sell the domain name."). Plaintiff has established a genuine issue of material fact on whether Defendants' registration of nearly 200 domain names using Plaintiff's mark was done in bad faith.

In addition, Defendants move for summary judgment based on the safe harbor defense, which states that "[b]ad faith intent . . . shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). The safe harbor does not apply when a defendant has notice that the use of the mark is infringing and yet continues to use the mark. *See* <u>Bulbs 4 E. Side, Inc. v. Ricks</u>, 199 F. Supp. 3d 1151, 1171 (S.D. Tex. 2016) (Harmon, J.) ("Defendant had constructive notice that his use was not protected by the fair use doctrine, but continued to infringe. This was clearly unreasonable, and bars the application of the safe harbor."). Because Plaintiff notified Defendants of its claim that Defendants' use of Plaintiff's trademark was infringing long before Defendants registered the domain names, Defendants are not entitled to summary judgment based on the safe harbor defense.

## IV. Order

For the reasons set forth above, it is hereby

ORDERED that Defendants' Motion for Summary Judgment (Document No. 65) is DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 22nd day of January, 2020.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE